

FILED22 SEP '11 1059USDC-ORP

Anne Milligan, Esq.
Josh Sanford, Esq.
SANFORD LAW FIRM, PLLC
650 South Shackleford, Suite 400
Little Rock, Arkansas 72211
(Phone) (501) 221-0088
(Fax) (888) 787-2040
anne@sanfordlawfirm.com
josh@sanfordlawfirm.com

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **JASON LaFORD, KELLY LIVINGSTON, MARCELLE GAMBOA, RYAN BEESON, BRYAN MILLER, DANIEL ALTABEF, MICHELE FONTAINE, TIMOTHY BUCHOLZ, NATE BOULTON, AMIE TELLER, WANDA KAUTZ, CLAY FRANDSEN, TINA JENSEN, STAN RABER, DAVID TAXER, and CORTEZ COUCH,**<br>                    **PLAINTIFFS**<br><br>                vs.<br><br><br>**AT&T MOBILITY SERVICES, LLC, A DELAWARE CORPORATION, DEFENDANT** | **Case No: CV-11-928 PK**<br><br><br><br><br><br><br><br><br><br>**COMPLAINT**<br>**Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*) DEMAND FOR JURY TRIAL** |

## FIRST AMENDED AND SUBSTITUTED COMPLAINT

COME NOW Plaintiffs Jason LaFord, Kelly Livingston, Marcelle Gamboa,

Ryan Beeson, Bryan Miller, Daniel Altabef, Michele Fontaine, Timothy Bucholz,

Nate Boulton, Amie Teller, Wanda Kautz, Clay Frandsen, Tina Jensen, Stan

Raber, David Taxer and Cortez Couch, by and through their attorneys Anne Milligan and Josh Sanford of the Sanford Law Firm, PLLC, and for their First Amended and Substituted Complaint against Defendant AT&T Mobility Services, LLC (hereinafter referred to as "Defendant"), and in support thereof they do hereby state and allege as follows:

I.

## INTRODUCTION

### A.  General Facts

1.    Plaintiffs have not previously amended their Original Complaint; as such this First Amended and Substituted Complaint is filed of right pursuant to Rule 15 of the FRCP.

2.    The purpose of this First Amended and Substituted Complaint is twofold—first, it is to add Plaintiffs Nate Boulton, Amie Teller, David Taxer and Cortez Couch, each of the Portland Division and Plaintiffs Wanda Kautz, Tina Jensen, Clay Frandsen, and Stan Raber of the Eugene Division. Plaintiff Frandsen's claims arose in the Portland Division.

3.    Second, Plaintiff's First Amended and Substituted Complaint serves to dismiss improper Defendants AT&T Mobility LLC, and AT&T Corp., to replace them with proper Defendant AT&T Mobility Services, LLC.

## II.

## JURISDICTION AND VENUE

4.      Plaintiffs seek a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.   Plaintiffs seek compensation and other relief under the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. § 201 *et seq*.

5.      Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

6.      The acts complained of herein were committed and had their principal effect within the United States District of Oregon; therefore, venue is proper within this District pursuant to 28 U.S.C. § 1391.

7.      Five Plaintiffs reside in the Portland Division; Seven Plaintiffs reside in the Eugene Division; and two Plaintiffs reside in the Medford Division.

8.      Defendant has retail locations in all of these divisions.

9.      Defendant's center of business in the District of Oregon is in the greater Portland metropolitan area; Defendant has forty-nine locations within a fifty-mile radius of Portland, Oregon.

10.      Furthermore, the instant action is the state-based spin-off action of a recently decertified nationwide FLSA class action, and based on the prior action's opt-in plaintiffs, Plaintiff's counsel expects that numerous other Plaintiffs will join the instant action; many of these Plaintiffs live and work, or lived and worked, in the Portland Division of this Court.

11.    For the purposes of judicial economy all Plaintiffs should be allowed to file and proceed with their case together in one division; to wit, the Portland Division.

III.

**FACTUAL BACKGROUND**

12.    This is an action brought by Plaintiffs Ryan Beeson, Jason LaFord, Marcelle Gamboa, Kelly Livingston, Bryan Miller, Daniel Altabef, Michele Fontaine, Timothy Bucholz, Nate Boulton, Amie Teller, Wanda Kautz, Clay Frandsen, Tina Jensen Stan Raber, David Taxer and Cortez Couch against Defendant.

13.    Plaintiffs were former opt-in plaintiffs in the conditionally certified nationwide FLSA collective action styled *Zivali v. AT&T Mobility, et al.* – Case No.: 08-10310, currently pending in the United States District Court for the Southern District of New York (hereinafter referred to as "the New York Action").

14.    The New York Action was conditionally certified as a collective action pursuant to that court's Order dated July 14, 2009.

15.    The New York Action was decertified as a collective action pursuant to that court's Order dated May 11, 2011.

16.    Under the tolling doctrine established by the Supreme Court of the United States in *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), the commencement of a class proceeding tolls the statute of limitations period for all purported members of the class and "remains tolled for all members

of the putative class until class certification is denied." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983).

17.    Upon decertification of a class action, former members of a class may move to intervene in the case, pursue a more narrowly defined class action, file separate cases, or pursue other legal action.

18.    In order to protect the rights of the members of the former class in *Zivali* to pursue their claims, Plaintiffs requested and received continuation of the tolling period until at least June 27, 2011, on all claims covered by the former certified class.

19.    In light of the May 11, 2011 Order in the New York Action, Plaintiffs now seek to protect their rights under the FLSA through the instant suit, in their home state.

20.    Plaintiffs were employees who, during the statutory period, worked as hourly Retail Sales Consultants (and who may have at various times, and without legal significance, been called "Retail Sales Associates" or "Retail Sales Representatives") or hourly Assistant Store Managers for Defendant at any of its several locations statewide and were denied their clearly-established, statutory rights under applicable state and federal law.

21.    Defendant AT&T Mobility Services, LLC—a Delaware limited liability company—has forty-nine locations within just a fifty-mile radius of Portland, Oregon.

22.    AT&T Mobility is the wholly owned wireless subsidiary of AT&T, Inc. and is the successor to Cingular.  AT&T Mobility is the largest mobile phone

company in the country, if not the world, with approximately 74.9 million U.S. subscribers.

23.     Plaintiffs were classified by Defendant as non-exempt under the FLSA and were each paid an hourly rate. Plaintiffs all shared a similar job title or titles, training, appearance requirements, compensation plans, job descriptions and requirements, among other things.

24.     Defendant managed Plaintiffs' work, including training, appearance requirements, amount of hours worked and compensation paid. Defendant dictated, controlled, and ratified the wage and hour and all related employee compensation policies.

25.     Pursuant to Defendant's common scheme, Plaintiffs were required to work off-the-clock in one or more of the following ways:

A.     Plaintiffs were required to have a company cell phone the number for which was on Plaintiffs' business cards and which number was given out to Defendant's customers at the direction of Defendant, resulting in frequent phone call conversations and text messages from Defendant's customers to Plaintiffs while Plaintiffs were off-the-clock. Plaintiffs were not paid for this time;

B.     Answering emails and text messages from customers while off-the-clock. Plaintiffs were not paid for this time;

C.     Opening and closing the store off-the-clock. Plaintiffs were not paid for this time;

D.     Working during the interim hour between the cessation of a company meetings and one's scheduled work period. Plaintiffs were not paid for this time;

E.     Accepting phone calls from management about work-related issues, or being required to participate in frequent conference calls which were held outside of normally scheduled business hours

(during which Plaintiffs were not "punched-in" to the AT&T timesheet program);

F.      Being required to work while "punched out" for lunch and to perform other work for AT&T outside their normal forty (40) hour work week for which Plaintiffs were not paid any compensation.

26.     Pursuant to Defendant's common practices, Plaintiffs were required to have a company cell phone and give out the number for this cell phone to customers on an AT&T business card. Because customers often could not reach the store directly when they called the main business phone or wanted an answer after business hours, customers often immediately resorted to contacting Plaintiffs directly via phone, email or text message at all hours, regardless of whether Plaintiffs were at work or "on the clock" during the contacts.

27.     Each and every customer contact and attempted customer contact was for the benefit of Defendant.

28.     Defendant failed to accurately record all time worked by Plaintiffs and failed to properly compensate Plaintiffs for all hours worked beyond the scheduled shifts. Additionally, Defendant deprived Plaintiffs of regular wages for time leading up to forty hours each week and then overtime compensation for hours over forty per week.

29.     Plaintiffs were required by Defendant to answer texts, emails and phone calls from customers about phone plans and sales regardless of whether they were clocked in or not.

30.     Pursuant to Defendant's common practices, Plaintiffs were required open Defendant's store with some of the labor being performed "off-the-clock."

31.     Defendant failed to accurately record all time worked by Plaintiffs before the start of Plaintiffs' scheduled shifts and failed to properly compensate Plaintiffs for all hours worked before their scheduled shifts. Specifically, Defendant deprived Plaintiffs of regular wages and overtime compensation for hours over forty per week.

32.     Pursuant to Defendant's common practices, Plaintiffs often worked past their scheduled shifts to close the store. Several times per week, Plaintiffs partially or completely closed the store "off-the-clock", or continued closing duties off-the-clock if Plaintiffs had already clocked out and were directed by management that there was more work to do.

33.     Pursuant to Defendant's common practices, Plaintiffs often worked off-the-clock during the interim time, often about an hour, following a Saturday company "team meeting," but before Plaintiffs' scheduled work was to begin.

34.     Pursuant to Defendant's common practices, Plaintiffs were required to accept phone calls and answer text messages and emails from management about work-related issues, including where returns, paperwork, or stock were located, etc.

35.     Plaintiffs were also required to participate in conference calls which were held outside of normally scheduled business hours (during which time Plaintiffs were not "punched-in" to the AT&T timesheet program).

36.     Many times Plaintiffs were not able to take an entire, uninterrupted lunch period, but were nonetheless clocked out for the entire half-hour to one-hour period while they performed work for Defendant.

37.     Approximately every other month, Plaintiffs were told that they could not take lunch at all, especially during and around the times of various product launches, such as new versions of the iPhone and other special sales related events; nonetheless, Plaintiffs were clocked out for the lunch period during this time and were not compensated for all of their working time as required under the law.

38.     Defendant's practices violated federal law.

39.     As a result of Defendant's unlawful practices, Defendant benefited from reduced labor and payroll costs.

40.     Plaintiffs were all subject to Defendant's uniform practices and were victims of Defendant's schemes to deprive them of regular and overtime compensation. As a result of Defendant's improper and willful failure to pay Plaintiffs in accordance with the requirements of the FLSA, Plaintiffs suffered lost wages and other damages.

41.     Plaintiffs bring this action for declaratory judgment, damages, back-pay, restitution, liquidated damages, civil penalties, prejudgment interest, court costs, attorneys' fees and any other relief that the Court deems just and reasonable under the circumstances, all as allowed under the FLSA.

### IV.

### PARTIES

A.     JASON LAFORD

42.     Plaintiff Jason LaFord (hereinafter "LaFord") is a citizen of the United States and is a resident and domiciliary of the Portland Division of the

District of Oregon. LaFord worked at Defendant's place of business in the Portland Division of the District of Oregon during the statute of limitations period, as applied to the facts of this case.

43.    At all times relevant to this Complaint, LaFord was intentionally and improperly made to work off-the-clock for Defendant, in violation of the Fair Labor Standards Act.

44.    LaFord was never compensated for his off-the-clock labor, and was sometimes left uncompensated even when he was clocked in.

45.    LaFord was employed by Defendant as an Assistant Store Manager from September 1, 2007, to July 31, 2008. During this time period, Defendant consistently failed to pay LaFord for all of the time he was required to arrive early or stay late, answer phone calls, text messages, or emails from customers off-the-clock, and for work during clocked out lunches or interim hours.

46.    Pursuant to the tolling doctrine of *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), LaFord's statute of limitations was tolled from the filing of the original New York Action on November 24, 2008, until Monday, June 27, 2011.

47.    LaFord generally answered between five and ten phone calls per day from customers while he was off-the-clock, each of which lasted up to five minutes. LaFord also generally answered five to seven emails and two text messages from AT&T customers every day.

48.   LaFord generally answered between five and ten phone calls per day from Defendant's management while off-the-clock, each of which lasted up to five minutes. LaFord also generally answered five to seven emails and two text messages from AT&T management every day.

49.   Defendant also failed to compensate LaFord for all of the time he spent opening and closing the store, requiring him to work off-the-clock to open and close the store approximately four mornings and/or four evenings a week.

50.   LaFord was also required to work without pay about three out of every five clocked out lunches. Such work lasted anywhere from a half hour to one full hour (the entire period of the lunch break). During this time, LaFord was told to attend to customers or run errands for management. For instance, LaFord was often told to retrieve phones from other store locations if his store was out of a particular model of phone that a customer wanted. LaFord was never compensated for this time.

51.   LaFord was told by members of Defendant's management that he would not be paid for any hours that he worked over forty because, even though he was an hourly employee, he was on track to one day be a salaried manager and his "goal [was] to impress," and not to cost the company more money.

52.   LaFord was told by members of Defendant's management that he should "make sure" that the daily hours of other workers "come out to be no more than eight hour shifts."

53.     LaFord regularly worked ten to twelve hour shifts each day that he worked at Defendant's store; however, each pay period his paycheck often revealed that he was being paid for no more than forty hours per week.

54.     Lastly, Defendant failed to compensate LaFord any time LaFord had a shift that followed a one-hour time gap after a Saturday team meeting. LaFord was not allowed to clock in to work until his scheduled shift began, but was still asked to perform work and did in fact perform work off-the-clock.


B.     PLAINTIFF KELLY LIVINGSTON

55.     Plaintiff Kelly Livingston (hereinafter "Livingston") is a citizen of the United States and is a resident and domiciliary of the Portland Division of the District of Oregon.  Livingston worked at Defendant's place of business in the Portland Division of the District of Oregon during the statute of limitations period, as applied to the facts of this case.

56.     At all times relevant to this Complaint, Livingston was intentionally and improperly made to work off-the-clock for Defendant, in violation of the Fair Labor Standards Act.

57.     Livingston was never compensated for his off-the-clock labor.

58.     Livingston was employed by Defendant as a Retail Sales Consultant from about December 2007 through December 2010. During this time period, Defendant consistently failed to pay Livingston for all of the time he was required to arrive early or stay late, answer phone calls, text messages, or emails

from customers or management off-the-clock, work in interim hours without pay, and work through lunch while off-the-clock.

59.     Pursuant to the tolling doctrine of *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), Livingston's statute of limitations was tolled from the filing of the original New York Action on November 24, 2008, until Monday, June 26, 2011.

60.     Livingston generally answered at least two calls from customers and two calls from management per week off-the-clock, each of which lasted up to ten minutes. Livingston also read and generally answered approximately three texts from customers and three texts from management per week.

61.     Defendant also failed to compensate Livingston for any time Livingston had a shift that followed a one-hour time gap after a company team meeting. Livingston was not allowed to clock in to work until his scheduled shift began, but was still asked to perform work and did in fact perform work off-the-clock.

62.     During the three years Plaintiff worked with AT&T, he was told that he could not take lunch at all at least eight times, especially during the launch of the various generations of the iPhone and other special sales related events; nonetheless, Plaintiff was clocked out for the half-hour lunch period during this time and was not compensated for his time as required under the law.

63.     During the three years Livingston worked with AT&T, Plaintiff's lunch was frequently interrupted with work-related requests, and he was not able

to take a continuous half hour lunch, despite being clocked out for a full half hour. Plaintiff was thus left uncompensated for all hours worked.

64.     Defendant's payroll policies and practices led to a variety of other methods of undercompensation that further injured Livingston

C.     PLAINTIFF RYAN BEESON

65.     Plaintiff Ryan Beeson (hereinafter "Beeson") is a citizen of the United States and is a resident and domiciliary of the Eugene Division of the District of Oregon.  Beeson worked at Defendant's place of business in the State of Nevada during the statute of limitations period, as applied to the facts of this case.

66.     At all times relevant to this Complaint, Beeson was intentionally and improperly made to work off-the-clock for Defendant, in violation of the Fair Labor Standards Act.

67.     Beeson was never compensated for his off-the-clock labor.

68.     Beeson was employed by Defendant as a Retail Sales Consultant from October 14, 2007, through June 30, 2009. During this time period, Defendant consistently failed to pay Beeson for all of the time he was required to arrive early or stay late, answer phone calls, text messages, or emails from customers off-the-clock, and for work during some interim hours.

69.     Pursuant to the tolling doctrine of *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), Beeson's statute of limitations was tolled from the filing of the original New York Action on November 24, 2008, until Monday, June 27, 2011.

70.     Beeson generally answered between four and five phone calls per day from customers off-the-clock, ultimately receiving upwards of thirty phone calls from customers off-the-clock each week. Each phone call lasted between ten minutes and an hour if Beeson was troubleshooting a particularly difficult query. As a result of the foregoing, Beeson spent between four and seven hours on the phone with customers off-the-clock each week.

71.     Beeson also generally answered up to ten calls from Defendant's management per week off-the-clock regarding the location of merchandise or paperwork, or other work-related questions, each of which lasted from five minutes to an hour. As a result, Beeson spent between two and three hours on the phone with management each week off-the-clock—time and labor Beeson was not paid for.

72.     Beeson also received and generally answered approximately two texts from customers and ten to fifteen text messages from Defendant's management each week. Beeson generally answered two emails per day from either management or a customer while off-the-clock.

73.     Defendant also required all Retail Sales Consultants, including Beeson, to clock out for lunch. Despite being clocked out, Beeson had to attend to customers two to three times per week, for up to twenty minutes each time. Beeson was not compensated for this time.

74.     Once a week, Defendant's management also required Beeson to clock out for his lunch break and then drive to another one of Defendant's stores to retrieve a particular model of cell phone if a customer had requested the model

and Beeson's store did not currently have it in stock. Due to the foregoing, Beeson was required to work through a half hour to the full hour of his lunch break, and he was not compensated for his time.

75.     Lastly, once every three weeks, Defendant failed to compensate Beeson any time his shift followed a one-hour time gap after a Saturday team meeting. Beeson was not allowed to clock in to work until his scheduled shift began, but was still asked to perform work and did in fact perform work off-the-clock.

D.      PLAINTIFF MARCELLE GAMBOA

76.     Plaintiff Marcelle Gamboa (hereinafter "Gamboa") is a citizen of the United States and is a resident and domiciliary of the Medford Division of the District of Oregon.  Gamboa worked at Defendant's place of business in the Medford Division of the District of Oregon during the statute of limitations period, as applied to the facts of this case.

77.     At all times relevant to this Complaint, Gamboa was intentionally and improperly made to work off-the-clock for Defendant, in violation of the Fair Labor Standards Act.

78.     Gamboa was not paid for this off-the-clock labor.

79.     Gamboa was employed by Defendant as a Retail Sales Consultant from about June 2008 through February 2009. During this time period, Defendant consistently failed to pay Gamboa for all of the time she was required to arrive early or stay late, answer phone calls, text messages, or emails from customers

or management off-the-clock, work in interim hours without pay, and work through lunch while off-the-clock.

80.     Pursuant to the tolling doctrine of *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), Gamboa's statute of limitations was tolled from the filing of the original New York Action on November 24, 2008, until Monday, June 27, 2011.

81.     Gamboa generally answered between three and four calls from customers and one to two calls from management per week off-the-clock, each of which lasted up to ten minutes except for management conference calls, which lasted an hour while Plaintiff was at home. While Gamboa generally answered emails off-the-clock less frequently, the text messages she generally answered off-the-clock from AT&T customers were too numerous to count.

82.     Defendant also failed to compensate Gamboa for any time Gamboa had a shift that followed a one-hour time gap after a company team meeting. Gamboa was not allowed to clock in to work until her scheduled shift began, but was still asked to perform work and did in fact perform work off-the-clock.

83.     Alternatively, there were times when, although Gamboa did not have a shift scheduled after a team meeting, she would still have to stay and work off-the-clock thirty minutes to an hour until other workers were ready to take over the AT&T sales floor.

84.     During the eight months Plaintiff worked for Defendant, she was told that she could not take lunch at all at least four times, especially during the launch of the various generations of the iPhone and other special sales related

events; nonetheless, Plaintiff was clocked out for the half-hour lunch period during this time and was not compensated for her time as required under the law.

85. Defendant also required all Retail Sales Consultants, including Plaintiff, to clock out for lunch. Despite being clocked out, Gamboa had to work the front floor if the store had become busy and fulfill various other work requests from Defendant's management throughout her entire lunch period.

E. PLAINTIFF BRYAN MILLER

86. Plaintiff Bryan Miller (hereinafter "Miller") is a citizen of the United States and is a resident and domiciliary of the Eugene Division of the District of Oregon. Miller worked at Defendant's place of business in the Eugene Division of the District of Oregon during the statute of limitations period, as applied to the facts of this case.

87. At all times relevant to this Complaint, Miller was intentionally and improperly made to work off-the-clock for Defendant, in violation of the Fair Labor Standards Act.

88. Miller was not compensated for his off-the-clock labor.

89. Miller was employed by Defendant as a Retail Sales Consultant from about 2006 through 2008. During this time period, Defendant consistently failed to pay Miller for all of the time he was required to arrive early or stay late, answer phone calls, text messages, or emails from customers or management off-the-clock, work in interim hours without pay, and work through lunch while off-the-clock.

90.     Pursuant to the tolling doctrine of *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), Miller's statute of limitations was tolled from the filing of the original New York Action on November 24, 2008, until Monday, June 27, 2011.

91.     Miller generally answered between five and twenty calls from customers and one to two calls from management per week off-the-clock, each of which typically lasted up to five minutes, but could sometimes last up to fifteen minutes when Plaintiff was troubleshooting technical problems for customers.

92.     Miller was also required to participate in management conference calls while Plaintiff was at home. While Miller generally answered emails off-the-clock less frequently, he frequently read and answered text messages from AT&T customers without pay.

93.     Defendant also failed to compensate Miller for any time Miller had a shift that followed a one-hour time gap after a company team meeting. Miller was not allowed to clock in to work until his scheduled shift began, but he was still asked to perform work and did in fact perform work off-the-clock.

94.     Alternatively, there were times when, although Miller did not have a shift scheduled after a team meeting, he would still have to stay and work off-the-clock thirty minutes to an hour until other workers were ready to take over the AT&T sales floor.

95.     During the time Plaintiff worked with AT&T, he was told that he could not take lunch at all at least four times, especially during the launch of the various generations of the iPhone and other special sales related events;

nonetheless, Plaintiff was clocked out for the half-hour lunch period during this time and was not compensated for his time as required under the law.

96.     During the time Plaintiff worked with AT&T, his lunch was frequently interrupted with work-related requests, and he was not able to take a continuous half hour lunch, despite being clocked out for a full half hour and thus left uncompensated for all hours worked.

F.     PLAINTIFF DANIEL ALTABEF

97.     Plaintiff Daniel Altabef (hereinafter "Altabef") is a citizen of the United States and is a resident and domiciliary of the Eugene Division of the District of Oregon.   Altabef worked at Defendant's place of business in the Eugene Division of the District of Oregon during the statute of limitations period, as applied to the facts of this case.

98.     At all times relevant to this Complaint, Altabef was intentionally and improperly made to work off-the-clock for Defendant, in violation of the Fair Labor Standards Act.

99.     Altabef never received any compensation for his off-the-clock labor.

100.     Altabef was employed by Defendant first as a Customer Service Representative, then second as a Retail Sales Consultant, and finally as an hourly-rate Assistant Store Manager from 2005 through 2009. During this time period, Altabef consistently failed to pay Altabef for all of the time he was required to answer phone calls, texts, or emails from customers or management off-the-clock, and for work during some interim hours.

101.    Pursuant to the tolling doctrine of *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), Altabef's statute of limitations was tolled from the filing of the original New York Action on November 24, 2008, until Monday, June 27, 2011.

102.    Altabef generally answered between ten and fifteen phone calls per week from customers off-the-clock, each of which lasted between two and fifteen minutes. Altabef also read fifteen to twenty emails, generally answered three emails, and read and replied to ten text messages monthly from AT&T customers.

103.    Altabef also generally answered ten to fifteen calls from management per week off-the-clock regarding the location of merchandise or paperwork, or other work-related questions, each of which lasted up to ten minutes each.

G.    PLAINTIFF MICHELE FONTAINE

104.    Plaintiff Michele Fontaine (hereinafter "Fontaine") is a citizen of the United States and is a resident and domiciliary of the Medford Division of the District of Oregon.  Fontaine worked at Defendant's place of business in the Medford Division of the District of Oregon during the statute of limitations period, as applied to the facts of this case.

105.    At all times relevant to this Complaint, Fontaine was intentionally and improperly made to work off-the-clock for Defendant, in violation of the Fair Labor Standards Act.

106.    Fontaine was never compensated for her off-the-clock labor.

107.   Fontaine was employed by Defendant as a Retail Sales Consultant from November 2009 to April 2010. During this time period, Defendant consistently failed to pay Fontaine for all of the time she was required to arrive early or stay late, answer phone calls, text messages, or emails from customers off-the-clock, and for work during some interim hours.

108.   Pursuant to the tolling doctrine of *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), Fontaine's statute of limitations was tolled from the filing of the original New York Action on November 24, 2008, until Monday, June 27, 2011.

109.   Fontaine generally answered between five and ten phone calls per week from customers off-the-clock, each of which lasted between five to twenty minutes. Fontaine also generally answered about fifteen text messages from AT&T customers per week, each without pay.

110.   Fontaine answered phone calls from Defendant's management every night that she worked, after she was off-the-clock, wherein management discussed Fontaine's sales numbers and quotas with her for five to ten minutes.

111.   Defendant also failed to compensate Fontaine for all of the time she spent closing the store. Every night that Fontaine worked, Fontaine's manager clocked Fontaine out at the close of the business day, without her knowledge, regardless of whether or not Fontaine was any where near completing her mandatory closing duties. Fontaine lost at least five hours of paid compensation each week due to Defendant's willful snub of both federal and state labor law.

112. When Fontaine noticed that her paycheck was incorrect and did not reflect the hours she spent closing, she brought this to the attention of her manager, who averred that he would correct the "mistake."

113. Fontaine's manager never corrected her hours to reflect the hours Fontaine actually worked, and Fontaine was never compensated for the same.

114. Defendant, via Fontaine's manager, also required Fontaine to conduct business while Fontaine was at local youth basketball games, having Plaintiff pass out business cards and solicit business for Defendant while present for the game, continuously throughout the game. During the basketball season, this happened up to twice a week, for two to three hours at a time—time Fontaine was not clocked in and for which she was never compensated.

115. Defendant, via Fontaine's manager, also required Fontaine to pass out flyers for Defendant on cars in various parking lots one to two times a week, for one hour each time. Fontaine was not clocked in during this time and was never compensated for the same.

116. Almost every Saturday, Defendant held one-hour company meetings at the store Fontaine worked at. If Fontaine or any other worker was even one minute late to the meeting, she was not allowed to clock in but was still required to remain for the entire meeting, without compensation. Due to Defendant's practice and policy, Fontaine was not allowed to clock in for the weekly company meeting approximately once every three weeks, and thus was not compensated for this time.

117.    Additionally, Fontaine wore a nametag and took her lunch directly outside the front of Defendant's store. Because of her nametag, attire, and proximity to the store, customers and management solicited her for assistance throughout her lunch, and she would frequently have to cease eating to help customers while clocked out. Management was aware of this; however, Fontaine was not compensated for this time.

118.    Due in part to the small-town nature of Fontaine's place of business (Brookings, Oregon) and residence (Harbor, Oregon), Fontaine was frequently stopped by Defendant's customers for questions related to Defendant's services, plans, and technical assistance while grocery shopping or performing other off-the-clock, personal life activities.

119.    These incidents would occur five times a week, with each encounter lasting five to ten minutes. Management was aware at all times that this regularly occurred.

H.    TIMOTHY BUCHOLZ

120.    Plaintiff Timothy Bucholz (hereinafter "Bucholz") is a citizen of the United States and is a resident and domiciliary of the Eugene Division of the District of Oregon.  Bucholz worked at Defendant's place of business in the Eugene Division of the District of Oregon during the statute of limitations period, as applied to the facts of this case.

121.    At all times relevant to this Complaint, Bucholz was intentionally and improperly made to work off-the-clock for Defendant, in violation of the Fair Labor Standards Act.

122.   Bucholtz was never paid for his off-the-clock labor.

123.   Bucholz was employed by Defendant as a Retail Sales Consultant from October 2005 through March 2007. During this time period, Bucholz consistently failed to pay Bucholz for all of the time he was required to answer phone calls, texts, or emails from customers or management off-the-clock, and for work during some interim hours.

124.   Pursuant to the tolling doctrine of *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), Bucholtz's statute of limitations was tolled from the filing of the original New York Action on November 24, 2008, until Monday, June 27, 2011.

125.   Bucholz generally answered at least ten phone calls per week from customers off-the-clock, each of which lasted between five and thirty minutes, with the average call lasting fifteen minutes. Bucholz also received numerous texts from customers, and he called the customer back rather than text them, under the same time frames discussed above.

126.   Bucholz also received four and five emails per week from Defendant's customers, which took about five minutes each to respond to.

127.   Bucholz also answered calls off-the-clock from management approximately once every week and a half per week regarding the location of merchandise or paperwork, sales numbers or quotas, or other work-related questions, each of which lasted up to ten minutes each.

128.   During the time Bucholz worked for Defendant, his lunch was frequently interrupted with work-related requests, and he was not able to take a

continuous half hour lunch, despite being clocked out for a full half hour and thus left uncompensated for all hours worked. About once per week, Bucholz was deprived of his entire one-hour lunch break due to work requests while clocked out for lunch. Bucholz was never compensated for this time.

129.   Management was at all times aware of these regular occurrence.

130.   Defendant also failed to compensate Bucholz for all of the time he spent opening and closing the store, requiring him to work off-the-clock to open or close the store approximately three mornings and/or three nights a week, for twenty minutes each time.

I.   NATE BOULTON

131.   Plaintiff Nate Boulton (hereinafter "Boulton") is a citizen of the United States and is a resident and domiciliary of the Portland Division of the District of Oregon.   Boulton worked at Defendant's place of business in the Portland Division of the District of Oregon during the statute of limitations period, as applied to the facts of this case.

132.   At all times relevant to this Complaint, Boulton was intentionally and improperly made to work off-the-clock for Defendant, in violation of the Fair Labor Standards Act.

133.   Boulton was never compensated for his off-the-clock labor.

134.   Boulton was employed by Defendant during various periods prior to the applicable statute of limitations, and for approximately six months in 2007. During this time period, Defendant consistently failed to pay Boulton for all of the

time he was required to arrive early or stay late, answer phone calls, text messages, or emails from customers off-the-clock, and for work during a clocked out lunch or interim hours.

135.   Pursuant to the tolling doctrine of *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), Boulton's statute of limitations was tolled from the filing of the original New York Action on November 24, 2008, until Monday, June 27, 2011.

136.   As a result of company policy, Defendant required Boulton to put Boulton's phone number directly into the customer's newly purchased phone before the customer left the store.

137.   As a result, Boulton generally answered up to four phone calls per day from customers while off-the-clock, each of which typically lasted five to ten minutes but which sometimes lasted up to thirty minutes. Boulton also answered text messages from AT&T customers every week.

138.   Boulton answered either a phone call or a text from each day from Defendant's management while off-the-clock, each of which lasted up to five minutes. Management did this to check Boulton's sales numbers and quotas, after each night that Boulton worked.

139.   Management would make additional, longer calls to Plaintiff above and beyond this to clarify other work-related matters several times per month.

140.   Defendant also failed to compensate Boulton for all of the time he spent opening the store, requiring him to work off-the-clock to open the store anytime the computer system was down or failed to start up in a timely manner.

141.   Boulton was also required to work through a clocked out lunch at least once per week. Such work often lasted the entire period of the clocked out lunch. During this time, Boulton was told to attend to customers or perform other duties as necessary if the business was busy, even though Boulton was not being paid for his time as an hourly employee.

142.   Management was aware of that this occurred on a regular basis.

143.   Boulton regularly worked at least twenty minutes over a straight eight-hour shift each day that he worked at Defendant's store; however, each pay period his paycheck often revealed that he was being paid for no more than forty hours per week.

144.   Numerous times, Boulton was paid for only forty hours, which did not accurately reflect the actual numbers of hours he had worked that week in the store on-the-clock, let alone hours he put in at home while on the phone with customers and management or in other interim hours.

145.   Lastly, Defendant aggressively encouraged Boulton and others like him to reach out to local businesses to try to recruit them for AT&T services; however, as Boulton was at the AT&T store all day, there was no way he could do so while physically at the AT&T store, helping live customers purchase cell phones and cell phone plans. Accordingly, Boulton would often go out on his own time to visit local, small businesses to recruit them to sign on to AT&T plans. Boulton was never paid for this time.

J.      PLAINTIFF AMIE TELLER

146.    Plaintiff Amie Teller (hereinafter "Teller") is a citizen of the United States and is a resident and domiciliary of the Portland Division of the District of Oregon. Teller worked at Defendant's place of business in the Portland Division of the District of Oregon during the statute of limitations period, as applied to the facts of this case.

147.    At all times relevant to this Complaint, Teller was intentionally and improperly made to work off-the-clock for Defendant, in violation of the Fair Labor Standards Act.

148.    Teller was never paid for her off-the-clock labor.

149.    Teller was employed by Defendant as a Retail Sales Consultant from 2003 through 2009. During this time period, Defendant consistently failed to pay Teller for all of the time she was required to arrive early or stay late, answer phone calls, text messages, or emails from customers or management off-the-clock, work in interim hours without pay, and work through lunch while off-the-clock.

150.    Pursuant to the tolling doctrine of *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), Teller's statute of limitations was tolled from the filing of the original New York Action on November 24, 2008, until Monday, June 27, 2011.

151.    Teller generally answered numerous calls from customers and management per week off-the-clock, each of which lasted anywhere from five to

thirty minutes except for management conference calls, which generally lasted an hour. Teller also answered emails and text messages off the clock.

152.   Defendant also often failed to compensate Teller for all the time she spent either opening or closing the store, especially when there was a promotion going on or holiday work to be done.

153.   Teller may have been uncompensated any time she had a shift that followed a one-hour time gap after a company team meeting. Teller was not allowed to clock in to work until her scheduled shift began, but was still asked to perform work and did in fact perform work off-the-clock. Her manager told her he would adjust the time sheets, but he sometimes he failed to do so.

154.   During the years Plaintiff worked with AT&T, she was sometimes told she could not take lunch at all, and would other times have to work through portions of or an entire clocked out lunch without warning, due to customer volume and management's demands.   Teller was not compensated for all her time as required under the law.

155.   During her time working for Defendant, Teller generally worked the closing shift. During a time period that she worked there, management clocked her out at exactly 9:30 PM each night, automatically, regardless of whether or not the work was finished for the evening.

156.   As a result of this patently unlawful practice, Teller was not compensated for all her time.

157.   Other unlawful practices also led to time and labor for which Teller was not compensated, despite performing work for Defendant.

K.    WANDA KAUTZ

158.    Plaintiff Wanda Kautz (hereinafter "Kautz") is a citizen of the United States and is a resident and domiciliary of the Eugene Division of the District of Oregon.  Kautz worked at Defendant's place of business in the Eugene Division of the District of Oregon during the statute of limitations period,  as applied to the facts of this case.

159.    At all times relevant to this Complaint, Kautz was intentionally and improperly made to work off-the-clock for Defendant, in violation of the Fair Labor Standards Act.

160.    Kautz was not paid for any of her off-the-clock labor.

161.    Kautz was employed by Defendant as a Retail Sales Consultant from June 1999 through July 2007. During this time period, Defendant failed to pay Kautz for all of the time she was required to work.

162.    Pursuant to the tolling doctrine of *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), Kautz's statute of limitations was tolled from the filing of the original New York Action on November 24, 2008, until Monday, June 27, 2011.

163.    In early 2007, Defendant's management implemented a special test on cell phones, data plans, and other complicated aspects of technologies that were sold at the store that Kautz worked at.

164.    Kautz and other workers were told that they had three attempts to pass the test, and that if they did not pass the test on the third try, they would be terminated from Defendant's employ.

165.   Kautz was terrified of the prospect of unemployment, and immediately set to studying for the test, as she hoped to pass the first time.

166.   Kautz studied at least twenty-five hours over the next two weeks, and passed the test the first time.

167.   Kautz was never paid for this time.

L.   CLAY FRANDSEN

168.   Plaintiff Clay Frandsen (hereinafter "Frandsen") is a citizen of the United States and is a resident and domiciliary of the Eugene Division of the District of Oregon.   Frandsen worked at Defendant's place of business in the Portland Division of the District of Oregon during the statute of limitations period, as applied to the facts of this case.

169.   At all times relevant to this Complaint, Frandsen was intentionally and improperly made to work off-the-clock for Defendant, in violation of the Fair Labor Standards Act.

170.   Frandsen was never compensated for his off-the-clock labor.

171.   Frandsen was employed by Defendant as a Retail Sales Consultant and/or Assistant Store Manager during the statute of limitations relative to this case. During this time period, Defendant consistently failed to pay Frandsen for all of the time he was required to arrive early or stay late, answer phone calls, text messages, or emails from customers off-the-clock, and for work during a clocked out lunch or interim hours.

172.   Pursuant to the tolling doctrine of *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), Frandsen's statute of limitations was

tolled from the filing of the original New York Action on November 24, 2008, until Monday, June 27, 2011.

173.    Frandsen answered phone calls from Defendant's customers and management while off-the-clock every week while he was employed by Defendant. Frandsen also answered emails and text messages from Defendant's customers and management.

174.    Defendant also failed to compensate Frandsen for all of the time he spent opening and closing the store.

175.    Frandsen was also frequently required to work during part or through an entire clocked out lunches. Frandsen was told to attend to customers, perform work, or run errands for management.

176.    Throughout the time Frandsen worked for Defendant, Defendant's practices and policies led to numerous ways through which Defendant failed to compensate Frandsen for all time he spent laboring for Defendant.

M.    TINA JENSEN

177.    Plaintiff Tina Jensen (hereinafter "Jensen") is a citizen of the United States and is a resident and domiciliary of the Eugene Division of the District of Oregon. Jensen worked at Defendant's place of business in the Eugene Division of the District of Oregon during the statute of limitations period, as applied to the facts of this case.

178.    At all times relevant to this Complaint, Jensen was intentionally and improperly made to work off-the-clock for Defendant, in violation of the Fair Labor Standards Act.

179.    Jensen was employed by Defendant as an Retail Sales Consultant and/or Assistant Sales Manager during the statute of limitations as relevant to this case. During this time period, Defendant consistently failed to pay Jensen for all of the time she was required to arrive early or stay late, answer phone calls, text messages, or emails from customers off-the-clock, and for work during a clocked out lunch or interim hours.

180.    Pursuant to the tolling doctrine of *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), Jensen's statute of limitations was tolled from the filing of the original New York Action on November 24, 2008, until Monday, June 27, 2011.

181.    Jensen answered phone calls from Defendant's customers and management while off-the-clock every week while she was employed by Defendant. Jensen also answered emails and text messages from Defendant's customers and management.

182.    Defendant also failed to compensate Jensen for all of the time she spent opening and closing the store.

183.    Jensen was also frequently required to work during part or through an entire clocked out lunches. Jensen was told to attend to customers, perform work, or run errands for management.

184.    Throughout the time Jensen worked for Defendant, Defendant's practices and policies led to numerous ways through which Defendant failed to compensate Jensen for all time he spent laboring for Defendant.

N.    STAN RABER

185.    Plaintiff Stan Raber (hereinafter "Raber") is a citizen of the United States and is a resident and domiciliary of the Eugene Division of the District of Oregon.  Raber worked at Defendant's place of business in the Eugene Division of the District of Oregon during the statute of limitations period,  as applied to the facts of this case.

186.    At all times relevant to this Complaint, Raber was intentionally and improperly made to work off-the-clock for Defendant, in violation of the Fair Labor Standards Act.

187.    Raber was employed by Defendant as an Retail Sales Consultant and/or Assistant Sales Manager during the statute of limitations as relevant to this case. During this time period, Defendant consistently failed to pay Raber for all of the time he was required to arrive early or stay late, answer phone calls, text messages, or emails from customers off-the-clock, and for work during a clocked out lunch or interim hours.

188.    Pursuant to the tolling doctrine of *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), Raber's statute of limitations was tolled from the filing of the original New York Action on November 24, 2008, until Monday, June 27, 2011.

189.    Raber answered phone calls from Defendant's customers and management while off-the-clock every week while he was employed by Defendant. Raber also answered emails and text messages from Defendant's customers and management.

190.   Defendant also failed to compensate Raber for all of the time he spent opening and closing the store.

191.   Raber was also frequently required to work during part or through an entire clocked out lunches. Jensen was told to attend to customers, perform work, or run errands for management.

192.   Throughout the time Raber worked for Defendant, Defendant's practices and policies led to numerous ways through which Defendant failed to compensate Jensen for all time he spent laboring for Defendant.

O.    DAVID TAXER

193.   Plaintiff David Taxer (hereinafter "Taxer") is a citizen of the United States and is a resident and domiciliary of the Portland Division of the District of Oregon.   LaFord worked at Defendant's place of business in the Portland Division of the District of Oregon during the statute of limitations period,   as applied to the facts of this case.

194.   At all times relevant to this Complaint, Taxer was intentionally and improperly made to work off-the-clock for Defendant, in violation of the Fair Labor Standards Act.

195.   Taxer was employed by Defendant as a Retail Sales Consultant from July 2007 to February 2008. During this time period, Defendant consistently failed to pay Taxer for all of the time he was required to arrive early or stay late, answer phone calls, text messages, or emails from customers off-the-clock, and for work during a clocked out lunch or interim hours.

196.    Pursuant to the tolling doctrine of *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), Taxer's statute of limitations was tolled from the filing of the original New York Action on November 24, 2008, until Monday, June 27, 2011.

197.    Taxer answered multiple phone calls every day from customers off-the-clock, each of which lasted from anywhere between five minutes and an hour. Taxer also generally answered three emails and multiple text messages from AT&T customers every day.

198.    Taxer also answered phone calls, emails, and text messages every day from Defendant's management while off-the-clock.

199.    Defendant also failed to compensate Taxer for all of the time he spent opening the store or performing duties before he was allowed to clock in, requiring him to work off-the-clock to open the store multiple mornings per week due to the sluggish computer time system and / or not being allowed to clock in until a specific, set hour, even if one arrived fifteen minutes early and was immediately put to work.

200.    Taxer was also required to call in to a conference call once a month for one hour each time. He was never clocked in and never paid for this time.

201.    Taxer was also required to work through an entire clocked out lunch once every other week, for the entire lunch period.

202.    Taxer was also sometimes made to run errands for management. For instance, Taxer was often told to retrieve phones from other store locations if

his store was out of a particular model of phone that a customer wanted. Taxer was never compensated for this time.

203.   Defendant furthermore failed to compensate Taxer any time Taxer had a shift that followed a one-hour time gap after a Saturday team meeting. Taxer was not allowed to clock in to work until his scheduled shift began, but was still asked to perform work and did in fact perform work off-the-clock.

204.   Lastly, Defendant aggressively encouraged Taxer and others like him to reach out to local businesses to try to recruit them for AT&T services; however, as Taxer was at the AT&T store all day, there was no way he could do so while physically at the AT&T store, helping live customers purchase cell phones and cell phone plans.

205.   Accordingly, Taxer would often go out on his own time to visit local, small businesses to recruit them to sign on to AT&T plans. Taxer was never paid for this time, which he estimates was at least twenty hours in the first four months that he worked for Defendant.

P.     CORTEZ COUCH

206.   Plaintiff Cortez Couch (hereinafter "Couch") is a citizen of the United States and is a resident and domiciliary of the State of Washington. Couch worked at Defendant's place of business in the Portland Division of the District of Oregon during the statute of limitations period, as applied to the facts of this case.

207.   At all times relevant to this Complaint, Couch was intentionally and improperly made to work off-the-clock for Defendant, in violation of the Fair Labor Standards Act.

208.   Couch was employed by Defendant as an Retail Sales Consultant and/or Assistant Sales Manager during the statute of limitations as relevant to this case. During this time period, Defendant consistently failed to pay Couch for all of the time he was required to arrive early or stay late, answer phone calls, text messages, or emails from customers off-the-clock, and for work during a clocked out lunch or interim hours.

209.   Pursuant to the tolling doctrine of *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), Couch's statute of limitations was tolled from the filing of the original New York Action on November 24, 2008, until Monday, June 27, 2011.

210.   Couch answered phone calls from Defendant's customers and management while off-the-clock every week while he was employed by Defendant. Couch also answered emails and text messages from Defendant's customers and management.

211.   Defendant also failed to compensate Couch for all of the time he spent opening and closing the store.

212.   Couch was also frequently required to work during part or through an entire clocked out lunches. Jensen was told to attend to customers, perform work, or run errands for management.

213.   Throughout the time Couch worked for Defendant, Defendant's practices and policies led to numerous ways through which Defendant failed to compensate Jensen for all time he spent laboring for Defendant.

Q.   DEFENDANT

214.   At all relevant times Defendant has been or was the employer of Plaintiffs as defined by the FLSA.  As such, Defendant violated the laws set forth below and is liable to Plaintiffs.

215.   Defendant is a foreign for profit corporation and was Plaintiffs' employer within the meaning of the FLSA, 29 U.S.C. § 203(d), for all relevant statutory time periods.

216.   The registered agent for AT&T Mobility Services, LLC, is CT Corporation System, which is located at 388 State St., Suite 420, Salem, Oregon, 97301-3581.

217.   However, notwithstanding the above, opposing counsel has directed that service shall be sufficient if mailed to his attention at Andrew W. Bagley, Esq., Crowell & Moring LLP, 1001 Pennsylvania Avenue, N.W., Washington, D.C. 20004.   Exhibit A to Plaintiff's Motion for Leave to File First Amended Complaint.

218.   At all relevant times, Defendant has owned and operated a cellular phone communication business engaged in interstate commerce and which utilized goods which moved in interstate commerce.

219.   During the relevant time period the annual gross revenues of Defendant exceeded $500,000.00 per annum.

220. Defendant was at all relevant times engaged in commerce as defined in 29 U.S.C. § 203(r) and § 203(s).

221. Defendant constitutes an "enterprise" within the meaning of 29 U.S.C. § 203(r)(1), because it performed related activities through common control for a common business purpose.

222. At relevant times the enterprise engaged in commerce within the meaning of 29 U.S.C. § 206(a) and § 207(a).

R.    MISCELLANEOUS

223. At all times material herein, Plaintiffs have been entitled to the rights, protection and benefits provided under the 29 U.S.C. § 201, *et seq*.

224. No exceptions to the application of the FLSA apply to Plaintiffs.

## V.

## DEFENDANT'S INTENT

225. All actions by Defendant were willful and not the result of mistake or inadvertence.

226. Defendant knew or should have known that the FLSA required employers to keep accurate time records to be kept of all hours worked by employees, and required that non-exempt employees be paid for each and every hour worked while in Defendant's employ.

227. Defendant knew of or should have been aware of previous litigation and enforcement actions relating to wage and hour violations where employees were made to work off-the-clock to open or close a store, to answer phone calls, text, or emails off-the-clock, or for any other purpose.

228.    Plaintiffs are aware of no cases which support Defendant's intentionally inaccurate record keeping and underpayment.

229.    Despite being on notice of its violations, Defendant chose to continue to fail to pay Plaintiffs minimum or overtime wages for all hours worked in effort to enhance their profits.

## VI.

## INJURY AND DAMAGE

230.    Plaintiffs have suffered injury, incurred damages and financial loss as a result of Defendant's conduct complained of herein.

## VII.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE FLSA

## (Failure to Pay Statutory Minimum Wages, Including Overtime Wages)

231.    Plaintiffs hereby re-allege and incorporate by reference the preceding paragraphs as if they were set forth again herein.

232.    Plaintiffs assert this claim for damages and declaratory relief pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

233.    At all relevant times Defendant has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

234.    At all relevant times Defendant has employed and/or continues to employ "employee[s]," including Plaintiffs, who have been and/or continue to be

engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

235. At all relevant times, Defendant has had annual gross operating revenues in excess of $500,000.00.

236. 29 U.S.C. § 206 requires that Defendant pay all employees minimum wages for all hours worked. 29 U.S.C. § 206(a) provides in pertinent part:

Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

(1) Except as otherwise provided in this section, not less than--

(A) $5.85 an hour, beginning on the 60th day after May 25, 2007;

(B) $6.55 an hour, beginning 12 months after that 60th day; and

(C) $7.25 an hour, beginning 24 months after that 60th day.

237. 29 U.S.C. §207(a) provides in pertinent part:

…no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged n commerce or in the production of goods for commerce for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

238. Defendant failed to pay Plaintiffs the full contractual and/or minimum and overtime wages set forth in 29 U.S.C. §§ 206 and 207.

239.    In the alternative and based upon the foregoing, Plaintiffs are entitled to the full statutory minimum and overtime wages set forth in 29 U.S.C. §§ 206 and 207 for all periods in which they worked for Defendant.

240.    Defendant failed to pay Plaintiffs the full contractual and/or minimum wages throughout the relevant time period because it intentionally made Plaintiffs work off-the-clock and failed to record Plaintiffs' actual hours worked.

241.    Based on the foregoing, Plaintiffs are entitled to the full contractual and/or statutory minimum and overtime wages set forth in 29 U.S.C. §§ 206 and 207 for all periods in which they worked for Defendant.

242.    Defendant's conduct in failing to properly record Plaintiffs' hours worked and thereafter failing to pay for each hour of the same was willful and done to avoid paying them the full contractual and/or minimum and overtime wages and the other benefits that Plaintiffs were legally entitled to.

243.    The FLSA provides that a private civil action may be brought for the payment of federal minimum and overtime wages and for an equal amount in liquidated damages in any court of competent jurisdiction by an employee on behalf of him/herself and other employees similarly situated pursuant to 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.").

244.    Moreover, Plaintiffs should recover attorneys' fees and costs incurred in enforcing their rights, pursuant to 29 U.S.C. § 216(b).

245.    Based on the foregoing, Plaintiffs seek unpaid contractual and/or minimum wages at the required legal rate for all of their working hours during the relevant time period, liquidated damages, prejudgment interest, attorneys' fees and litigation costs and all other costs and penalties allowed by law.

## VIII.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE FLSA

## (Failure to Maintain Records)

246.    Plaintiffs hereby re-allege and incorporate by reference the preceding paragraphs as if they were set forth again herein, except to the extent the foregoing allegations are inconsistent with those set forth in this count.

247.    29 U.S.C. § 211(c) provided in pertinent part:

(c)    Records

Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

248.    29 C.F.R. § 516.2 and 29 C.F.R. § 825.500 further require that every employer shall maintain and preserve payroll or other records containing,

without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

249.   29 U.S.C. § 215(a)(5) provides in pertinent part:

…[I]t shall be unlawful for any person –

(5) to violate any provision of section 211(c) of this title…

250.   Defendant failed to maintain all records required by the aforementioned statutes and regulations, including those showing all hours Plaintiffs and other members of the collective class worked during the relevant time period.

251.   As a result of the foregoing, Defendant has violated the FLSA.

252.   Defendant's conduct was willful and not the result of mistake or inadvertence. It would be inequitable for Defendant to retain the benefits received as a result of its misconduct.

253.   As a direct result of Defendant's unlawful conduct, Plaintiffs have suffered injury, incurred damages and financial loss.

254.   When the employer fails to keep accurate records of the hours worked by its employees, the rule in <u>Anderson v. Mt. Clemens Pottery Co</u>., 328 U.S. 680, 687-88, 66 S.Ct. 1187 (1946) is controlling.  That rule states:

> …where the employer's records are inaccurate or inadequate…an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court

may then award damages to the employee, even though the result
be only approximate.

255.    The Supreme Court set forth this test to avoid placing a premium
on an employer's failure to keep proper records in conformity with its statutory
duty, thereby allowing the employer to reap the benefits of the employees' labors
without proper compensation as required by the FLSA.  Where damages are
awarded pursuant to this test, "[t]he employer cannot be heard to complain that
the damages lack the exactness and precision of measurement that would be
possible had he kept records in accordance with…the Act." Id.

256.    Accordingly, Plaintiffs seek appropriate relief against Defendant
including damages, restitution, estoppel from asserting the lack of employment
records as a defense, penalties, liquidated damages, attorneys' fees and costs
and all other relief just and appropriate in the circumstances.

### IX.

### DEMAND FOR JURY TRIAL

257.    Plaintiffs demand a trial by jury upon all issues herein.

### X.

### PRAYER FOR RELIEF

WHEREFORE,  premises  considered,  Plaintiffs  Jason  LaFord,  Kelly
Livingston, Marcelle Gamboa, Ryan Beeson, Bryan Miller, Daniel Altabef,
Michele Fontaine, Timothy Bucholz, Nate Boulton, Amie Teller, Wanda Kautz,
Clay Frandsen, Tina Jensen, Stan Raber, David Taxer and Cortez Couch
respectfully pray that Defendant be summoned to appear and answer herein; for

an order of this Honorable Court entering judgment in Plaintiffs' favor against Defendant; and that the Court award Plaintiffs their actual economic damages in an amount to be determined at trial, but in any event an amount not less than that which would compensate them for unpaid back wages; unpaid overtime wages; for accrued interest; for their liquidated damages for Defendant's willful violations of the FLSA; any and all civil penalties to which they may be entitled, for their attorneys' fees, costs, post-judgment interest, and all such other relief as provided by law and for such other and further relief as this Court deems necessary, just and proper.

**[THIS SPACE INTENTIONALLY LEFT BLANK.]**

Respectfully submitted,

**JASON LaFORD, KELLY LIVINGSTON, MARCELLE GAMBOA, RYAN BEESON, BRYAN MILLER, DANIEL ALTABEF, MICHELE FONTAINE, TIMOTHY BUCHOLZ, NATE BOULTON, AMIE TELLER, WANDA KAUTZ, CLAY FRANDSEN, TINA JENSEN, STAND RABER, DAVID TAXER and CORTEZ COUCH, PLAINTIFFS**

SANFORD LAW FIRM, PLLC
ONE FINANCIAL CENTER
650 S SHACKLEFORD STE 400
LITTLE ROCK, AR 72211
PHONE: (501) 221-0088
FACSIMILE: (888) 787-2040

Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com

BY:

Anne Milligan
Oregon Bar No. 111615
anne@sanfordlawfirm.com